UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| JORGE EDUARDO TERCERO ARGUETA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:25-cv-00229-SEB-KMB |
| | ) | |
| ANTHONY MILLS, | ) | |
| FIELD OFFICER DIRECTOR, | ) | |
| TODD M. LYONS, | ) | |
| KRISTI NOEM, | ) | |
| PAMELA BONDI, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR HABEAS CORPUS
AND DIRECTING FURTHER PROCEEDINGS**

Petitioner Jorge Eduardo Tercero Argueta ("Petitioner") is detained at the Clark County Jail
in Jeffersonville, Indiana, under the authority of U.S. Immigration and Customs Enforcement
("ICE"). He filed this writ of habeas corpus petition under 28 U.S.C. § 2241 seeking immediate
release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days. Dkt.
1. Petitioner argues that ICE is unlawfully detaining him under a statute making him ineligible for
bond. Respondents argue that Petitioner's detention is lawful and that the only available remedy,
if any, is a bond hearing.

The Court finds that Petitioner is statutorily eligible for bond and that his continued
detention without an opportunity for a bond hearing violates "the Constitution or laws or treaties
of the United States." 28 U.S.C. § 2241(c)(3). Therefore, the Court grants the petition to the extent
that, within **seven days** of this order, **Respondents are ordered** to either: (1) afford Petitioner an
individualized bond hearing before an Immigration Judge ("IJ") pursuant to 8 U.S.C. § 1226(a);
or (2) release Petitioner from custody, under reasonable conditions of supervision.

1

## I.    Background

Petitioner entered the United States without inspection on or about November 8, 2016, and he has lived therein ever since. Dkt. 9-1 at 5. On July 22, 2025, ICE detained Petitioner after local police in Avon, Indiana, requested assistance identifying an individual at a traffic stop. *Id*. At the time of his arrest, Petitioner was subject to a final order of removal. Dkt. 1 at 2. Petitioner, however, subsequently moved to have his removal proceedings reopened, and his motion was approved on October 1, 2025, rescinding his in abstentia removal order. Dkt. 9-1 at 7.

Petitioner has not moved for a bond hearing because "anyone who has entered the U.S. without inspection is now considered an 'applicant for admission' who is 'seeking admission and therefore subject to mandatory detention under § 1225(b)(2)(A)." Dkt. 1 at 4.

## II.    Discussion

Petitioner claims that his current detention violates the Immigration and Nationality Act ("INA") (Count I), bond regulations (Count II), and the Due Process Clause of the Fifth Amendment of the U.S. Constitution (Count III). Dkt. 1 at 10-12. In opposition, Respondents make four arguments: (A) Petitioner has not exhausted his administrative remedies by requesting a bond hearing; (B) Petitioner is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2) because he is an unadmitted alien; (C) Petitioner is lawfully detained under the INA pursuant to 8 U.S.C. § 1226 because he has the opportunity to receive a hearing; and (D) Petitioner's detention does not violate the Due Process Clause. Dkt. 9.

As discussed below, the Court grants the petition on the merits insofar as Petitioner seeks a prompt § 1226(a) bond hearing or immediate release.

### A.  Exhaustion of Administrative Remedies

Respondents argue that Petitioner did not exhaust his administrative remedies by moving for a bond hearing pursuant to § 1226(a). Dkt. 9 at 3-4. Petitioner argues that moving for a bond hearing without first filing a habeas petition would be futile because an IJ would deny his request for a bond hearing under the recent Bureau of Immigration Appeals ("BIA") decision *Matter of Yajure Hurtado* 29 I&N Dec. 216 (BIA 2025). *Hurtado* held that IJs do not have authority to hold bond hearings where the moving noncitizen is an unadmitted alien who entered the country without inspection.[1] Dkt. 1 at 4-5. Because Petitioner entered the country without inspection, if he were to move for a bond hearing, an IJ would have to decline jurisdiction over the issue because the IJ is bound by BIA precedent.

Respondents do not cite a statute requiring habeas petitioners to move for a bond hearing before seeking habeas relief. Thus, in the absence of a congressional mandate, the Seventh Circuit maintains that "'sound judicial discretion governs'" whether litigants are required to exhaust their administrative remedies before filing a habeas petition. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (quoting *McCarthy v. Madigan*, 503 U.S. 140 (1992)). *Gonzalez* held that exhaustion is inappropriate when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Id.* (quoting *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002)).

---

[1] As will be explained below, *Hurtado's* rationale is that noncitizens who entered without inspection are subject to the mandatory detention provision in § 1225, not the discretionary detention provision in § 1226(a).

In this case, requiring Petitioner to move for a bond hearing before filing this habeas petition would be futile because the agency has "predetermined" the issue. Respondents claim that Petitioner is detained under § 1225, which does not provide an opportunity for bond hearings. Furthermore, an IJ reviewing Petitioner's motion would be bound by *Hurtado's* holding that they "lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." *Matter of Yajure Hurtado*, 29 I&N at 225. Respondents have not shown that there is any reason to conceive that the BIA would change its position. *See H.G.V.U. v. Smith*, 2025 WL 2962610, at *4 (N.D. Ill. Oct. 20, 2025) ("Requiring Petitioner to exhaust his remedies by attempting to appeal the denial of bond would be futile. Indeed, if Petitioner were to appeal the decision of the Detroit Immigration Judge, Petitioner would be appealing to the very agency, the BIA, that issued *Matter of Yajure Hurtado*, which stripped the Immigration Court of its jurisdiction to set bond."). Because the issue is predetermined, Petitioner is not required to move for a bond hearing before challenging his detention.

**B.  The Lawfulness of Petitioner's Detention Pursuant to § 1225**

The merits of the petition revolve around Respondents' statutory authority to detain Petitioner while his removal proceedings remain pending. 8 U.S.C. § 1226 and § 1225 govern the detention and removal of noncitizens. In general, § 1226 applies to aliens already present in the United States," while § 1225 applies to "certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an IJ. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with

the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond . . . ; or
> (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

In contrast, § 1225 governs "inspection by immigration officers." Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers *shall* order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.* Section

1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, it provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be* detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). According to § 1225(a)(1), an "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)."

In sum, detention pursuant to § 1225 is mandatory and regulations do not provide for a bond hearing. Detention pursuant to § 1226(a) is discretionary and regulations provide for a bond hearing. Petitioner argues that he is eligible for a bond hearing because, based on the statute's text, context, and history, he can only lawfully be detained pursuant to 8 U.S.C. § 1226(a). Dkt. 1 at 6-10. Respondents argue that Petitioner is subject to the broader "catchall provision" in § 1225(b)(2) because he is an "alien . . . who has not been admitted," which is an "applicant for admission" according to § 1225(a)(1). Dkt. 9 at 6.

### i.    Statutory Text

As seen above, § 1225(b)(2) applies to noncitizens who fit three criteria: (1) "applicants for admission," (2) "if the examining immigration officer determines that an alien seeking admission*,*" and (3) "is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Respondents argue that Petitioner fits the criteria: he is "an applicant for admission" under § 1225(a)(1) and he is "not clearly and beyond a doubt entitled to be admitted." Dkt. 9 at 6. Moreover, Respondents claim that Petitioner "is presumably seeking admission to the United States" because he might seek relief from removal proceedings. Dkt. 9 at 8. As Petitioner points out, however, this does not bring his actions within the plain meaning of "seeking admission." Dkt.

1 at 9-10. "'[S]eeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *see also Beltran Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all noncitizens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and "those who have been present in the country for years are not actively 'seeking admission.'"). Petitioner is not "seeking admission." He entered the United States 9 years ago and has lived here ever since. Prior to his arrest, he never filed any applications seeking admission or seeking to change his immigration status. As many courts have explained, noncitizens such as Petitioner are "seeking to remain in the United States" not seeking admission. *Alejandro*, 2025 WL 2896348, at *7 ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago.").

The fact that Petitioner fits two out of three criteria does not suffice to show that § 1225(b)(2) applies to him. Furthermore, the fact that Petitioner plainly does not fit into the third criterion, "seeking admission," adds even more support to the conclusion that § 1225(b)(2) does not apply to Petitioner.

### ii.    Statutory Context

It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted). Considering § 1225 as a whole demonstrates that the most natural meaning of § 1225 is that it applies to "arriving" noncitizens attempting to enter the United States—not to noncitizens who are

already in the country. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in § 1225(b)(2), reflecting that Congress envisions § 1225 to apply broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. As Respondents concede, Petitioner "is not 'arriving' in the United States." Dkt. 9 at 6. Thus, the statutory context makes clear that the terms in § 1225(b)(2) do not include individuals such as Petitioner who entered without inspection and are later apprehended when already inside the United States.

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the "[a]pprehension and detention of aliens." The plain language here suggests that § 1226—not § 1225— applies to Petitioner because he is an alien, who was "apprehended" and "detained." A noncitizen "cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226." *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025). The provisions "can be reconciled only if they apply to different classes of aliens." *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025).

Last, Respondents' interpretation of § 1225(b)(2) would make the recently enacted amendment to § 1226(c) superfluous. Courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). "A basic canon of construction requires us to give meaning to every word of a statute." *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 605 (7th Cir. 2012). Congress passed the Laken Riley Act in 2025 to amend § 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. Adopting Respondents' reading would render the exceptions in § 1226(c) completely unnecessary and illogical. "When Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies. *Rodriguez v. Bostock*, 779 F. Supp. 3d, 1256–57 (W.D. Wash. 2025) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400 (2010)). Thus, a plain reading of the exception in § 1226(c) implies that § 1226 applies to noncitizens such as Petitioner, who have not been admitted or paroled.

### iii.    Prior Usage

Respondents' argument that only § 1225(b)(1)—and not the entirety of § 1225—applies to "arriving aliens" also fails when considering the statute's prior usage and interpretation. For example, 8 C.F.R. § 235.3(c)(1) notes that "[e]xcept as otherwise provided in this chapter, any

*arriving* alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section [1229a] shall be detained in accordance with section [1225(b)]." (emphasis added). Furthermore, the government previously applied section 1226(a) to unadmitted noncitizens, such as Petitioner, who entered the country without inspection. *See Matter of Hurtado*, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection.").

Taken together, the plain text of the statute, the statutory context, and DHS's prior usage and history demonstrate that Petitioner may only be lawfully detained pursuant to § 1226(a).

### C.  The Lawfulness of Petitioner's Detention Under § 1226

Respondents argue that Petitioner is lawfully detained under § 1226 because he has an opportunity to receive a bond hearing before an IJ. Dkt. 9 at 11. Thus, this Court cannot review the IJ's decision due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence that Petitioner has or had an opportunity to receive a bond hearing where the IJ would make an individualized determination of his custody pursuant to 8 C.F.R. § 236.1(d)(1). Furthermore, Respondents do not cite any binding precedent applying § 1226(e) to a habeas petition seeking a bond hearing pursuant to § 1226(a). In fact, Respondents' case, *Demore v. Kim*, 583 U.S. 510 (2003), held that § 1226(e) did *not* deprive courts of habeas jurisdiction over a challenge to detention under § 1226(c) because the petitioner did not challenge a discretionary judgment or a decision, but the statutory framework permitting his detention without bail. 530 U.S.

at 516–17. Similarly, Petitioner is not challenging a discretionary judgment—he is challenging his ongoing detention without being given the opportunity to seek a discretionary judgment regarding his custody.

In sum, Petitioner's detention without opportunity to request a bond hearing from an IJ who will individually determine his eligibility for bond pursuant to § 1226(a) violates the INA. Petitioner is thus entitled to habeas relief because his continued detention violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

### D.  Due Process

Petitioner argues that his ongoing detention without a bond hearing violates his due process rights because the government has not made a determination about his dangerousness or flight risk and the risk of erroneous deprivation is exceptionally high. Dkt. 1 at 11-12. Respondents argue that Petitioner's detention is "reasonable" because he has not been detained for longer than six months. Dkt. 9 at 12-13. In this way, under *Zadvydas*, 533 U.S. at 701 and *Demore*, 538 U.S. at 528, Petitioner's detention is presumably not indefinite. *Id.*

Because Petitioner is entitled to habeas corpus relief on the grounds discussed above, however, the Court reserves judgment on Petitioner's Constitutional claims.

## III.    Scope of Relief

Petitioner requests immediate release from custody or, in the alternative, an individualized bond hearing within 7 days. Dkt. 1 at 13. Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, ordering an

11

individualized bond hearing is appropriate here because detention under § 1226(a) is discretionary and the due process violation arises from Petitioner's detention without a bond hearing.

### IV.    Conclusion

For the above reasons, the Court **grants** the petition for writ of habeas corpus. Respondents' detention of Petitioner without an individualized bond hearing violates the ". . . laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Within **seven days** of this order, Respondents must either: (1) provide Petitioner with an individualized bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a); or (2) release Petitioner from custody, under reasonable conditions of supervision. Respondents must document that they have provided Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) or that they have released him. Respondents **must file notice with the court within four days** of either action.

The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Date:    12/9/2025

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel of record